Good morning. Welcome back. Thank you for your patience. Let's call the last case, please. Good morning. I'm Jillian Cutler and I represent DeMario Sterling. I'd like to reserve three minutes of my time for rebuttal. The court has asked the parties to address two questions, whether there is a protected property interest in the pandemic emergency unemployment compensation benefits and whether the case is justiciable. I'll address each in turn. The key test for determining a due process property interest is whether an individual's eligibility for the benefit is mandated according to objective statutory criteria or whether it is left to the discretion of agency officials. Here, the employment security department was required to grant PEUC benefits to claimants who met the detailed statutory authority that is set out in both the CARES Act and Washington state law. They had no discretion to deny benefits to individuals like Mr. Sterling who met those criteria. How should we distinguish this case from the 10th Circuit Winter case, which that was a statute, PUA, but had the same sort of mandatory language? In a couple of ways. First of all, PUA benefits are for individuals who don't otherwise qualify for the unemployment benefits and therefore the interplay between the regular benefits of the PEUC benefits is not at issue. The district And why does that distinction matter? Is it because there will be individual discretionary or at least individual determinations by the state to determine eligibility for PUA benefits? Your Honor, let me take a step back. I think the 10th Circuit's decision is distinguishable with regard to mootness. I think that the decision with regard to whether there is a property interest is simply incorrect. And that the court in that case, the district court in that case erred in the same way that the district court in this case erred by conflating the agency's discretion at a programmatic level, whether to eliminate or end funding for the program, with the agency's discretion at an individual level, whether to grant benefits to individual claimants. But how is the mootness different? If you're saying we're not going to draw any distinction between the fact that the PUA, you do have to do these individual assessments, these are gig workers, they're not eligible for regular unemployment benefits, there's some individual assessment that needs to be made, whereas for PEUC you're automatically eligible if you're eligible for regular unemployment benefits. So how do we make a distinction on the mootness issue? Is it that the plaintiffs in winter, none of them qualified for PUA? Is that what? I'm just asking for some help in distinguishing. Sure. And here I'm distinguishing between the property interest issue that was involved in winter and then the mootness issue. The mootness issue, which the 10th Circuit took up, is different in two regards. In that case, the plaintiff was an independent contractor who is not eligible for regular unemployment benefits, either prior to receiving the PUA or subsequently. And the relief that they were seeking in that case was simply, prospective relief was simply the ability to apply for the benefits. So the 10th Circuit decided that because they had been given the opportunity to apply for the benefits during the course of the litigation and the fact that in that case PUA was no longer active and had been repealed, that it would never arise again because they were not entitled to regular benefits. So is the $345 of overpayment still on the books at ESD for Mr. Sterling? It is. Okay. Would that then be your justiciability argument? No, not entirely, Your Honor. Our justiciability argument is But does that help you with your justiciability argument? It does, but it's not required. It helps. And of course, that's why the district court, they looked at it twice. They couldn't make a determination of what was being offset and twice said that it can't be resolved on summary judgment. Your complaint is very vague about whether the overpayments are coming from the regular unemployment benefits or from the PEUC benefits. So what are you alleging, that the overpayment is coming from both? We believe they are coming from both, Your Honor. And part of the problem is that the records in this case are very unclear about what ESD was doing. And taking a step back, they said they were assessing him for $12 a week or $13 a week in overpayments. They ended up assessing over $7,000. And they don't tell us what the money that they have required him to repay covers. If I'm understanding correctly, the district court found that there was a genuine dispute of material fact over which payments the offsets were taken from. And that is not subject to interlocutory review. Is that correct? That's correct. What is the evidence in the record that the overpayments were taken from the unemployment benefits? Is it just the time period that those redetermination of benefit letters said, hey, you have an overpayment from September 20th of 2020 to December 26th, 2020? Is that the evidence? Because that September 20th through 26th, he would have only been getting unemployment benefits. He wouldn't have been getting PEUC benefits. Is that the evidence? Or what evidence is the record that overpayment is coming from regular unemployment benefits? Two sources. You have to kind of merge the records a bit. But yes, in part, it's because that $339 is from September 20th through 26th when we know on ER 83 that that was for regular unemployment benefits. Also on ER 83, it shows overpayments taken in the last four lines. The 339, what are you referring to? Not the 345 that's still on the books today. What's the 339? The 339 is what is still on the books today. But let me be clear that Mr. Sterling is seeking retrospective relief for the damages and for the prejudgment interest that he is entitled to while to compensate him for the time that unemployment took these damages. Not only for the amount that was offset but for prejudgment interest. My understanding is they've returned bulk of the money that was offset except for the $300 plus but have not paid prejudgment interest. Correct. So he has a live damages claim. Then there's the question of prospective relief, injunctive or declaratory relief for which he needs separate Article III analysis. Correct. Absolutely. And we need to take a step back to understand that what he is challenging here is the defendant's practices of using an automated system to retroactively reevaluate claims, assess overpayments and take the payments without notice. And that is a practice that is ongoing and that applies equally to regular unemployment benefits and the PEUC benefits. Essentially it's two sources of funding that is just dropping down into the same system. So if I understand your argument correctly, even though the PEUC program has now ended, the due process claim seeking prospective relief is not moot because the same practices that are at issue here to offset regular state unemployment benefits. That it's a live issue with respect to current state benefit recipients. Yes, Your Honor. And under ACHOA, Mr. Sterling meets the low threshold for procedural standing because he is still an employee in Washington State and could apply for unemployment benefits in the future. He would be subjected to the same policies and procedures that led to this violation. And so that threat of injury is sufficiently real under ACHOA to provide standing for prospective relief. Okay, you have nine seconds left, but I'll give you a minute for your rebuttal. Thank you. Nine seconds left, but go ahead. Thank you for that. Let me hear from counsel for the defendants. Thank you, Your Honor. I just want to make sure that I'm getting this right. May it please the Court, Marcia Chen for the State of Washington. There is no property interest in a temporary unemployment insurance program that was hastily built during pandemic. Regardless, Mr. Sterling's prayers for relief are not justiciable. Before this litigation was ever filed, the department had paid all of the overpayments it had offset and the program had expired. To have a property interest, Mr. Sterling must show that there were, quote, rules or mutually explicit understandings that support an entitlement. Rules or mutually explicit understandings. Here, the COVID-era unemployment benefits were hastily built within a matter of weeks. There was simply no time to create the rules and mutually explicit understandings necessary for a property interest. Counsel, what didn't the agreement, essentially the contract between the state and the federal government expressly require the state to provide the PEUC benefits under the same conditions that it provides regular state employment benefits? Certainly, the CARES Act provision included a general acceptance of the terms and conditions of the regular unemployment benefits, but that doesn't make it doesn't undermine the first provision of the CARES Act, which gives the state unfettered discretion to participate in the program. And I think Colson v. Sillman is helpful here. Colson v. Sillman involved a law that required the state to provide, shall provide, children's disability benefits, children with disability benefits, but elsewhere in the statute indicated that those benefits were limited by what the judgment of the state health official. So this is the same- The state couldn't literally just end the program at a whim. I mean, even under the contract, it said it had to give a certain amount of notice, it had to continue paying benefits for a certain period of time. And I don't understand how, I mean, a state can technically just decide we're not going to provide unemployment insurance anymore. That discretion doesn't mean there is no property interest while the program exists. Well, certainly there could be, there could be, the state's acceptance of terms and conditions indicate that there would be a distribution of benefits while the program exists. But those terms and conditions don't undermine the unfettered discretion that the state had. And those terms and conditions still do something. They're not meaningless. So the state provided, because the state accepted the terms and conditions allowed under the CARES, under the regular unemployment benefits, that's why Mr. Sterling was successful in challenging his overpayments here. Those procedures and terms and conditions allowed for Mr. Sterling to successfully challenge his overpayments. And I want to make, I want to make sure I make one point about Are you saying the state had unfettered discretion to deny an individual benefits even if they were eligible for regular unemployment benefits? No, Your Honor. What I'm saying, I want to make sure I'm making the distinction between a difference between programmatic decisions and individual determinations. And I think counsel's made a point that there might be a property interest in individual determinations even if there's not a, even if there's not a property interest in a mass change or a programmatic thing. But that doesn't necessarily mean that every government individual determination has a property interest. There still must be a rule or mutually explicit understanding that there was a property interest here. And I want to make sure I get to the mootness issue, too, and clarify. The $339 that still sit on the ESD's books isn't money owed to Mr. Sterling. It was money that was not offset. So that's money that basically says John Doe owes me $339. But it was never actually taken from any amount from Mr. Sterling's benefits. The state's position he still owes that money? No, he does not owe that money. That money has been frozen. So there was no argument of spoliation. That's the litigation position. It was on your books that that was an overpayment paid to him that he then owed to return to ESD. Correct. But that's not a deprivation if it wasn't actually taken. That's not the deprivation. The source of the deprivation that Mr. Sterling is challenging is the actual taking of his PEUC benefits. And I agree that there's confusion as to whether or not the overpayment... But what he's challenging is the ESD's administration of the benefits, right? And his due process rights of having three different letters all sent on the same day with vastly different information. So why isn't that evidence that this due process violation of just not having information about exactly what does he owe, when are his appeal deadlines? That's ongoing because the agency is still claiming that he was overpaid and owes the agency money. Whether it's $345, $339, the number keeps changing, which I think is also indicative of the problem of they're just so vastly different numbers and all these various letters from ESD. Your Honor, I understand there was full recognition that the program was set up within a matter of weeks and there were errors during the pandemic era unemployment benefits program. But the $339 was never actually deprived. It was not taken from Mr. Sterling's benefits. In order for there to be a due process right, due process doesn't promise you perfect notices. I think that much is indicated in Atkins' source. Not perfect, but not several conflicting ones. Correct. There's no question that the notices were not perfect. But that's not the source of the due process violation. The source of the due process violation is the actual deprivation, the actual ESD's actual taking of the over... So doesn't the record show that there was offsets taken from the plaintiff while his appeal was still pending? Your Honor, and that's sort of the question, is whether or not there's a property interest. Again, due process protects a property interest that's been deprived. So the threshold question, the only one really that was certified for appeal was whether there is a property interest. Correct. And on that threshold question, we would argue that there's no property interest. And I think that the court can look to Colson v. Silman and Capps v. Wing, which all indicate that a state's unfettered discretion in participating in the program is not enough to create a property interest. And that is understandable because every court to have considered the question has found that there's no property interest in COVID-era unemployment benefits. Is there a property interest in the state regular employment benefits? Yes, Your Honor. And that stems... And the pandemic-era unemployment benefits are different from regular UI, which comes from 42 U.S.C. 503. And this is different from extended UI, which also contains... It stems from a different law. And the district court found there's a genuine dispute of material fact as to whether offsets were made from his regular state unemployment insurance benefits. No, we do not agree there's a dispute of fact. Even based on the... The district court found there was. Correct. The district court found there was, but this court also has an obligation to determine We don't have jurisdiction over that dispute. That's a district court's determination of whether there is a genuine dispute of material fact. Yes, Your Honor, but I think this court still has an obligation. Every court at every level has a requirement to consider their Article III jurisdiction over a claim. And here, there is no dispute of fact because the overpayments were not discovered until 2021. His regular unemployment benefits expired in 2020. So there was no chance that any offsets that occurred could have come from the regular unemployment benefits. But if you look at the letters, they say that the overpayment began on September 20th, 2020. And at that point, he was only on regular unemployment benefits because his PUC benefits didn't start till October 3rd. Certainly, but the point is, when he was receiving regular unemployment benefits, he received the overpayment. He was getting the benefits. He was getting the regular unemployment benefits. The district, I'm sorry, the department didn't offset until he was only receiving pandemic-era unemployment benefits. So the only property that he might have had was the pandemic-era unemployment benefits. And that was, and that, for that, that claim is moot. I'm sorry, that part- And if we disagree with you on the threshold property question, then the mootness problem is also going away, correct? No, Your Honor. We still think that the request for declaratory and injunctive relief is moot because there's no, there's no program. No, but I, okay, I think, I think the distinction here is you're saying because we collected the money when he was only on PUC benefits, that could only be PUC overpayment. But what I'm saying is the ESD letters, three different letters of January 29, 2021, they are saying your overpayments of benefits started on September 20th of 2020 when he was exclusively on regular unemployment benefits. Yes. So any overpayment that was recaptured by the state had to have included some regular unemployment benefit payments. No, and that's what- When the money was collected, the government was saying you owe us from overpayments for those regular unemployment benefits. For sure, I think there is a dispute as to whether or not the, the, the amount is calculated from regular unemployment benefits versus pandemic-era unemployment benefits. All right, wouldn't that affect your justiciability argument then? No, because his regular unemployment benefits weren't actually deprived. He wasn't, so- You're saying as a, that's, that's a very technical argument. You're saying, though, the issue was that you believe, the state believes his state benefits were overpaid. Isn't that true? Your Honor, just, just to clarify, if Mr. Sterling had been receiving regular unemployment benefits in 2021, the state would not have offset his, would not have offset his, his benefits because the state has, and the state is not allowed to, and wouldn't normally do so, and it wouldn't do so because- He was receiving regular state unemployment benefits. The state's position, technically, is that he received too much, correct? For the regular state unemployment benefits. He, he did receive too much, but under our regular state law, we wouldn't have offset them. So you're saying, but we could offset them freely from the PEUC benefits. No, no, that's not our, that's not our argument. Even while his appeal of the contention that he overpaid was pending. No, we agree that there was an error into whether or not there should have been an offset, whether it's under regular unemployment benefits, but, or pandemic error and unemployment benefits. But the question is whether or not there's a constitutionally due process right to those benefits. And it's clear that there's still a procedure for Mr., Mr. Sterling to challenge those offsets that were made to his pandemic error unemployment benefits. And that's what he successfully did here. And I just want to make, make, make sure it's crystal clear. If he had been receiving regular unemployment benefits, ESD would have not offset his regular unemployment benefits at all in 2021. There's no evidence or allegation that any, that the department had ever offset, would ever set, offset, or had ever offset regular unemployment benefits. And that's because the regular unemployment benefits was set up over hundreds of years. It's been around for a hundred years, hundreds of years. The department has no, has. But the state's agreement with the federal government was that you would process the PEUC benefits exactly like you process state benefits. So now you're saying, well, we wouldn't have done the same thing with state benefits, that makes no sense. We would say that the, the federal law that it all stems from certainly requires the state to agree to terms and conditions. But it doesn't also undermine the, the first provision of the CARES Act, which allows for unfettered discretion. And I think if you look at the agreement. Discretion as to whether to participate, not discretion to breach those terms, specific terms. Certainly, certainly there, certainly there might be a property interest if there was individual, in an individual determination. But here again, I think Coulson v. Sillman is instructive, and Caps v. Wing is instructive. That the individual determination here, the terms and conditions that the state agreed to, allowed for Mr. Sterling to challenge the offsets that were made and allowed him to receive those offsets in response. That doesn't necessarily mean there's a constitutionally protected right to those benefits. A constitutionally due process right would chill state participation in those accepting federal emergency funds if just by the mere act of accepting those funds that they would, it would incur a due process right. I know I'm over time. Yes. Okay, my colleagues have no further questions and I don't either. Thank you very much for your argument. You went nine seconds over. I would really encourage you to be extremely brief. I was just going to say that unless the judges have any additional questions, I don't have anything further. Thank you very much. No, thank you very much. All right, this case is submitted and we are adjourned for the day. Thank you all.
judges: BEA, KOH, SUNG